## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In Re: | ) **Waive 30 Days** |
| | ) |
| Risha Bricker, *Respondent* | ) Case No. 17-43664-659 |
| | ) |
| Carrington Mortgage Services, LLC, *Movant* | ) |
| | ) Chapter: 13 |
| vs. | ) |
| | ) **MOTION FOR RELIEF FROM** |
| Risha Bricker, *Respondent* | ) **STAY** |
| | ) |
| and | ) Filed By: Carrington Mortgage |
| | ) Services, LLC |
| Diana S. Daugherty, *Trustee* | ) |
| | ) Original Hearing Date: |
| | ) December 12, 2022 |
| | ) Original Hearing Time: 10 AM |
| | ) |
| | ) Hearing Location: 7 N |
| | ) |
| | ) Steven L. Crouch, #2903 |
| | ) Daniel A. West, #98415 |
| | ) Wendee Elliott-Clement, #50311 |
| | ) Hunter C. Gould, #65355 |
| | ) 13160 Foster Suite 100 |
| | ) Overland Park, KS 66213-2660 |
| | ) |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND CO-DEBTOR STAY COMBINED WITH NOTICE OF HEARING

**WARNING: THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE BY DECEMBER 5, 2022.**

**YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. THE DATE IS SET OUT ABOVE. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.**

**THE HEARING TO BE HELD ON THE DATE AND TIME ABOVE BEFORE THE HONORABLE Kathy A. Surratt-States, IN THE UNITED STATES BANKRUPTCY**

**COURT, EASTERN DISTRICT OF MISSOURI, 111 SOUTH 10TH STREET, ST. LOUIS, MISSOURI, 63102-2734, COURTROOM # 7N.**

Carrington Mortgage Services, LLC, its successors or assigns, ("Movant"), and in support of its motion, states as follows:

1.      Movant files this motion under Rules 4001 and 9014, Rules of Bankruptcy Procedure.  On May 25, 2017, the Debtor filed a Petition for Adjustment of Debts under Chapter 13 of the Bankruptcy Code wherein Movant was listed as a secured creditor as to real property of the Debtor.

2.      Jurisdiction is invoked in the District Court under 28 U.S.C. §1334(a) and jurisdiction is proper in this Court pursuant to 28 U.S.C. §1408(1) and §157(b)(2)(G).

3.      Risha Bricker ("Respondent", whether one or more) resides at 125 Pistis St., Arnold, Missouri 63010.

4.      Diana S. Daugherty is the Trustee duly appointed by law ("Trustee").

5.      On March 2, 2011, Andrew M. Bricker and Risha L. Bricker executed a promissory note (the "Note") in the principal sum of $284,062.00.  The Note originated in the name of Gershman Investment Corp. d/b/a Gershman Mortgage and was endorsed to Wells Fargo Bank, N.A. The A copy of the Note is attached as Exhibit "A".

6.      Contemporaneously with the execution of the Note, a Deed of Trust was executed to secure repayment of the Note.  The Deed of Trust was filed for record with the Office of the Recorder of Deeds of Jefferson County, Missouri, on March 4, 2011, Document No. 2011R-007636.  The Deed of Trust originated in the name of Mortgage Electronic Registration Systems, Inc., as beneficiary, as nominee for Gershman Investment Corp. d/b/a Gershman Mortgage, and was assigned to Wells Fargo Bank, N.A.  A copy of the Deed of Trust is attached as Exhibit "B".

7.      Carrington Mortgage Services, LLC services the loan on the Property referenced in this Motion.  In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant.  Movant, directly or through an agent,

has possession of the promissory note.  Movant will enforce the promissory note as transferee in possession.  Movant is the original mortgagee or beneficiary or the assignee of the Deed Of Trust.

All communications sent by Secured Creditor in connection with proceeding against the property including, but not limited to, notices required by state law and communications to offer and provide information with regard to a potential Forbearance Agreement, Loan Modification, Refinance Agreement, Loss Mitigation Agreement, or other Loan Workout, may be sent directly to Debtors.

8.     The Deed of Trust encumbers the property legally described as follows:

**LOT THIRTY-TWO (32) OF MAXVILLE GARDENS, A SUBDIVISION AS SHOWN BY PLAT ON FILE IN THE RECORDER'S OFFICE OF JEFFERSON COUNTY, MISSOURI, IN PLAT BOOK 252, PAGES 10 AND 11.**, commonly known as 125 Pistis St, Arnold, Missouri 63010-2663 (the "Property")

9.     Movant is entitled to enforce the Note and Deed of Trust .

10.     The Respondent has claimed the Property as exempt under 11 U.S.C. §522.

11.      The approximate unpaid principal balance due on the Promissory Note is in the amount of $242,240.53, an exact payoff is available upon request of an appropriate party.

12.     The Plan provides that the pre-petition arrearage due on the Note would be paid to the Trustee and Respondent would pay the post-petition payments directly to Movant.

13.     The Respondent has failed to pay the post-petition payments due on the promissory note held by the Movant.  The following amounts are now due and owing:

| DESCRIPTION | AMOUNT |
|---|---|
| (5) Late Payments @ $1,610.68 (07/01/2022 - 11/01/2022) | $8,053.40 |
| Suspense Balance | -$856.25 |
| Total | $7,197.15 |

14.     These amounts due and owing are in addition to any amounts that have come due after the filing of this Motion pursuant to the terms of the Promissory Note and Security Instrument.

15.     In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant has also incurred $850.00 in

legal fees and $188.00 in costs. Movant reserves all rights to seek an award or allowance of such fees and expenses in accordance with applicable loan documents and related agreements, the Bankruptcy Code and otherwise applicable law.

16.      The Respondent has failed to cure the delinquency and the estate lacks sufficient assets from which the delinquency can be cured. Movant's interest in the real property lacks adequate protection.

17.      Andrew M. Bricker is the non-filing Co-Debtor on the subject loan.

18.      Movant request Relief from Stay, including any applicable Co-Debtor Stay, under 11 U.S.C. § 1301.

19.      The Respondent has materially defaulted with respect to payment of Movant's secured claim and has caused unreasonable delay, which is prejudicial to this movant.

20.      To remedy this prejudicial delay to creditor, an Order for Relief from the Automatic Stay should be granted that is effective immediately without a stay of enforcement pursuant to Federal Rule of Bankruptcy Procedure 4001(a)(3).

21.      Movant seeks relief for the purpose of exercising its remedies available under state law, up to and including foreclosure of its mortgage against Respondent(s) interest in the Property. Movant further seeks relief in order to contact Respondent(s), at its option, by telephone or by written correspondence, to offer, provide and enter into a forbearance agreement, deed in lieu of foreclosure, loan modification, refinance agreement or other loan workout/loss mitigation agreement.

22.      Movant specifically requests permission from this Honorable Court to communicate with the Respondent(s) and Respondent(s)' counsel to the extent necessary to comply with applicable nonbankruptcy law.

**WHEREFORE**, Movant, its successors or assigns, prays that it be granted Relief from the Automatic Stay of 11 U.S.C. §362, including any applicable Co-Debtor Stay under 11 U.S.C. § 1301, to enforce its lien granted in the Deed of Trust and for such other and further relief, as the Court deems proper.

SOUTHLAW, P.C.

File No. 229343
Case No: 17-43664-659

*/s/ Hunter C. Gould*

Steven L. Crouch, (MBE #37783; EDMO #2903; KSFd #70244)
Daniel A. West (MBE #48812; EDMO #98415; KSFd #70587)
Wendee Elliott-Clement (MBE #50311; KS #20523)
Hunter C. Gould (MBE #65355; #KSFd #78608)
13160 Foster Suite 100
Overland Park, KS 66213-2660
(913) 663-7600
(913) 663-7899 Fax
moedbknotices@southlaw.com
**ATTORNEYS FOR MOVANT**

## CERTIFICATE OF MAILING/SERVICE

I certify that a true and correct copy of the foregoing document was filed electronically on November 11, 2022, with the United States Bankruptcy Court, and has been served on the parties in interest via email by the Court's CM/ECF System as list on the Court's Electronic Mail Notice List.

- **Jonathon B. Burford**    JBurford@stlouiscountymo.gov
- **Diana S. Daugherty**    standing_trustee@ch13stl.com, trust33@ch13stl.com
- **Wendee Noel Elliott-Clement**    moedbknotices@southlaw.com, ksbkecf@ecf.courtdrive.com
- **Office of US Trustee**    USTPRegion13.SL.ECF@USDOJ.gov
- **Timothy Patrick Powderly**    tim@powderlylaw.com, powderlylawmycmecf@gmail.com;info@andreyukbrazil.com;R51502@notify.bestcase.com
- **Daniel A. West**    moedbknotices@southlaw.com, ksbkecf@ecf.courtdrive.com

I certify that a true and correct copy of the foregoing document was filed electronically with the United States Bankruptcy Court, and has been served by Regular United States Mail Service, first class, postage fully pre-paid, addressed to the parties listed below on November 11, 2022.

Risha Bricker                                          Andrew M. Bricker
125 Pistis St                                          125 Pistis St
Arnold, MO 63010                                       Arnold, MO 63010
**RESPONDENTS**                                        **CO-DEBTOR**

SOUTHLAW, P.C.

*/s/ Hunter C. Gould*

Steven L. Crouch, (MBE #37783; EDMO #2903; KSFd #70244)
Daniel A. West (MBE #48812; EDMO #98415; KSFd #70587)
Wendee Elliott-Clement (MBE #50311; KS #20523)
Hunter C. Gould (MBE #65355; #KSFd #78608)
13160 Foster Suite 100
Overland Park, KS 66213-2660
(913) 663-7600
(913) 663-7899 Fax
moedbknotices@southlaw.com
**ATTORNEYS FOR MOVANT**

File No. 229343
Case No: 17-43664-659

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| Risha Bricker, *Respondent* | ) | |
| | ) | Case No. 17-43664-659 |
| | ) | |
| Carrington Mortgage Services, LLC, *Movant* | ) | Chapter: 13 |
| | ) | |
| vs. | ) | |
| | ) | |
| Risha Bricker, *Respondent* | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Diana S. Daugherty, *Trustee* | ) | |
| | ) | |
| | ) | |

<u>SUMMARY OF EXHIBITS AND CERTIFICATE OF SERVICE</u>

The following Exhibits referenced in the Attached Pleading filed on behalf of Carrington Mortgage Services, LLC are available on request to the undersigned.

1. Exhibit A, the Note dated March 2, 2011, in the principal sum of $284,062.00.

2. Exhibit B, the Deed of Trust for the Property that is the subject of the Pleading. The Deed of Trust was filed for record with the Office of the Register of Deeds of Jefferson County, Missouri, on March 4, 2011, Document No. 2011R-007636. The property is legally described as:

    **LOT THIRTY-TWO (32) OF MAXVILLE GARDENS, A SUBDIVISION AS SHOWN BY PLAT ON FILE IN THE RECORDER'S OFFICE OF JEFFERSON COUNTY, MISSOURI, IN PLAT BOOK 252, PAGES 10 AND 11.**, commonly known as 125 Pistis St, Arnold, Missouri 63010-2663

3. Exhibit C, the Corporate Assignment of the subject Deed of Trust.

4. Exhibit D, the Loan Modification Agreement (Deed of Trust).

<u>**CERTIFICATE OF MAILING/SERVICE**</u>

I certify that a true and correct copy of the foregoing document was filed electronically on November 11, 2022, with the United States Bankruptcy Court, and has been served on the parties in interest via email by the Court's CM/ECF System as list on the Court's Electronic Mail Notice List.

- **Jonathon B. Burford**    JBurford@stlouiscountymo.gov
- **Diana S. Daugherty**    standing_trustee@ch13stl.com, trust33@ch13stl.com
- **Wendee Noel Elliott-Clement**    moedbknotices@southlaw.com, ksbkecf@ecf.courtdrive.com
- **Office of US Trustee**    USTPRegion13.SL.ECF@USDOJ.gov
- **Timothy Patrick Powderly**    tim@powderlylaw.com, powderlylawmycmecf@gmail.com;info@andreyukbrazil.com;R51502@notify.bestcase.com
- **Daniel A. West**    moedbknotices@southlaw.com, ksbkecf@ecf.courtdrive.com

I certify that a true and correct copy of the foregoing document was filed electronically with the United States Bankruptcy Court, and has been served by Regular United States Mail Service, first class, postage fully pre-paid, addressed to the parties listed below on November 11, 2022.

Risha Bricker
125 Pistis St
Arnold, MO 63010
**RESPONDENTS**

Andrew M. Bricker
125 Pistis St
Arnold, MO 63010
**CO-DEBTOR**


SOUTHLAW, P.C.


_/s/ Hunter C. Gould_
_____

Steven L. Crouch, (MBE #37783; EDMO #2903; KSFd #70244)
Daniel A. West (MBE #48812; EDMO #98415; KSFd #70587)
Wendee Elliott-Clement (MBE #50311; KS #20523)
Hunter C. Gould (MBE #65355; #KSFd #78608)
13160 Foster Suite 100
Overland Park, KS 66213-2660
(913) 663-7600
(913) 663-7899 Fax
moedbknotices@southlaw.com
**ATTORNEYS FOR CREDITOR**

**Multistate**

# NOTE

March 2, 2011

### 125 PISTIS ST
### ARNOLD, MISSOURI 63010-2663
(Property Address)

### 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns.

"Lender" means GERSHMAN INVESTMENT CORP. D/B/A GERSHMAN MORTGAGE and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of TWO HUNDRED EIGHTY-FOUR THOUSAND SIXTY-TWO AND NO/100 Dollars (U.S. $284,062.00), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of FOUR AND ONE HALF percent (4.500%) per year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT

(A) Time

Borrower shall make a payment of principal and interest to Lender on the 1st day of each month beginning on May 1, 2011. Any principal and interest remaining on the 1st day of April, 2041, will be due on that date, which is called the "Maturity Date."

(B) Place

Payment shall be made at

### GERSHMAN INVESTMENT CORP. D/B/A GERSHMAN MORTGAGE
### 7 N. BEMISTON AVE.
### ST. LOUIS , MISSOURI 63105

or at such place as Lender may designate in writing by notice to Borrower.

(C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $1,439.30.

This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

FHA Multistate Fixed Rate Note - (10/95)
VMP-1R (0210).02
IDS, Inc.

Page 1 of 3

Borrower(s) Initials

Exhibit A

**(D) Allonge to this Note for payment adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. (Check applicable box.)

☐ Graduated Payment Allonge ☐ Growing Equity Allonge ☐ Other (specify)

**5. BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**6. BORROWER'S FAILURE TO PAY**

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of FIFTEEN calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR percent (4.000%) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

FHA Multistate Fixed Rate Note - (10/95)
VMP-1R (0210) 02
IDS, Inc.

Page 2 of 3

Borrower(s) Initials

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT YOU (BORROWER(S)) AND US (CREDITOR) FROM MISUNDERSTANDING OR DISSAPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.

_____ (Seal)
ANDREW M. BRICKER              -Borrower

_____ (Seal)
RISHA L. BRICKER              -Borrower

PAY TO THE ORDER OF:
WELLS FARGO BANK, N.A.
WITHOUT RECOURSE
GERSHMAN INVESTMENT CORP. D/B/A
GERSHMAN MORTGAGE

_____
MAGGIE HENNING, ASSISTANT SECRETARY

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.

By _____
Scott M. Swanson
Assistant Vice President

HTC
45-

* 2 0 1 1 R - 0 0 7 6 3 6   8 *
**2011R-007636**
FILED AND RECORDED
IN OFFICIAL RECORD
03/04/2011    02:10:45PM
DEBBIE DUNNEGAN, RECORDER
PAGES   8
REC FEE:  45.00
NS FEE:



_____ [Space Above this Line For Recording Data] _____

MIN:

DOCUMENT TITLE:  **DEED OF TRUST**

DOCUMENT DATE:  **March 2, 2011**

GRANTOR: **ANDREW M. BRICKER AND RISHA L. BRICKER, HUSBAND AND WIFE**
Address:    **125 PISTIS ST**
            **ARNOLD, MISSOURI 63010-2663**

GRANTEE: **GERSHMAN INVESTMENT CORP. D/B/A GERSHMAN MORTGAGE**
Address:    **7 N. BEMISTON AVE.**
            **ST. LOUIS , MISSOURI 63105**

TRUSTEE  **MARK C. UNANGST**
Address:    **7 N. BEMISTON AVE.**
            **ST. LOUIS, MISSOURI 63105**

Full Legal Description is located on page: _____

Reference Book(s) and Page(s), if required: _____

_____

Exhibit B

DOCUMENT TITLE: **PURCHASE MONEY DEED OF TRUST**

DOCUMENT DATE: **March 2, 2011**

GRANTOR: **ANDREW M. BRICKER AND RISHA L. BRICKER, HUSBAND AND WIFE**
Address: **125 PISTIS ST
ARNOLD, MISSOURI 63010-2663**

GRANTEE: **GERSHMAN INVESTMENT CORP. D/B/A GERSHMAN MORTGAGE**
Address: **7 N. BEMISTON AVE.
ST. LOUIS , MISSOURI 63105**

TRUSTEE **MARK C. UNANGST**
Address: **7 N. BEMISTON AVE.
ST. LOUIS, MISSOURI 63105**

Full Legal Description Located on Page _____1_____

Reference Books and Pages if Required:

WHEN RECORDED, RETURN TO:
**GERSHMAN INVESTMENT CORP. D/B/A
GERSHMAN MORTGAGE
7 N. BEMISTON AVE.
ST. LOUIS , MISSOURI 63105**

This instrument was prepared by:
**GERSHMAN INVESTMENT CORP. D/B/A
GERSHMAN MORTGAGE
7 N. BEMISTON AVE.
ST. LOUIS , MISSOURI 63105
314-854-9538**

[Space Above This Line for Recording Data]

**State of Missouri**

# DEED OF TRUST

FHA Case Number: ███████

MIN: ████████████

PROPERTY LEGAL DESCRIPTION
**LOT THIRTY-TWO (32) OF MAXVILLE GARDENS, A SUBDIVISION AS SHOWN BY PLAT ON FILE IN THE RECORDER'S OFFICE OF JEFFERSON COUNTY, MISSOURI, IN PLAT BOOK 252, PAGES 10 AND 11.**

THIS DEED OF TRUST ("Security Instrument") is made on **March 2, 2011**.

The Grantor is **ANDREW M. BRICKER AND RISHA L. BRICKER, HUSBAND AND WIFE**, ("Borrower") whose address is **125 PISTIS ST, ARNOLD, MISSOURI 63010-2663**

The trustee is **MARK C. UNANGST**, ("Trustee").

The beneficiary is **Mortgage Electronic Registration Systems, Inc.** ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of **Delaware**, and has an address and telephone number of **P.O. Box 2026, Flint, MICHIGAN 48501-2026, tel. (888) 679-MERS.**

**GERSHMAN INVESTMENT CORP. D/B/A GERSHMAN MORTGAGE,** ("Lender")
is organized and existing under the laws of **ARKANSAS,**
and has an address of 7 N. BEMISTON AVE., ST. LOUIS , MISSOURI 63105.

Borrower owes Lender the principal sum of **TWO HUNDRED EIGHTY-FOUR THOUSAND SIXTY-TWO AND NO/100,** Dollars (U.S. **$284,062.00**). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **April 1, 2041.** This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property located in **JEFFERSON** County, Missouri:

**SEE PAGE 1 FOR PROPERTY LEGAL DESCRIPTION**

Parcel ID Number: ███████

which has the address of: **125 PISTIS ST**
                  **ARNOLD, MISSOURI 63010-2663,** ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time

("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. Application of Payments. All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contest in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require

immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any

removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

If Lender invokes the power of sale, Lender or Trustee shall mail copies of a notice of sale in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property to any later time on the same date by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without

conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**21. Lease of the Property.** Trustee hereby leases the Property to Borrower until this Security Instrument is either satisfied and released or until there is a default under the provisions of this Security Instrument. The Property is leased upon the following terms and conditions: Borrower, and every person claiming an interest in or possessing the Property or any part thereof, shall pay rent during the term of the lease in the amount of one cent per month, payable on demand, and without notice or demand shall and will surrender peaceable possession of the Property to Trustee upon default or to the purchaser of the Property at the foreclosure sale.

**22. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider  ☐ Graduated Payment Rider  ☐ Adjustable Rate Rider
☐ Planned Unit Development Rider  ☐ Growing Equity Rider  ☐ Other:

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ -Witness          _____ -Witness

_____ (Seal)            _____ (Seal)
ANDREW M. BRICKER            -Borrower            RISHA L. BRICKER            -Borrower

STATE OF MISSOURI, _Jefferson_ County ss:

On this _2nd_ day of _March_, _2011_, before me personally appeared **ANDREW M. BRICKER** and **RISHA L. BRICKER** to me known to be the person(s) described in and who executed the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free act and deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

My Term Expires: _____

_____
Notary Public  Eva Faulkner

EVA FAULKNER
MY COMMISSION EXPIRES 01/02/2014
NOTARY PUBLIC
NOTARY SEAL
COMMISSION #10690736
JEFFERSON COUNTY
STATE OF MISSOURI



RECEIVED

MAY - 4 2012



*2012R-016073 2*

2012R-016073
FILED AND RECORDED
IN OFFICIAL RECORD
05/04/2012    12:06:01PM
DEBBIE DUNNEGAN, RECORDER
PAGES   2
REC FEE:  27.00
NS FEE:



## CORPORATE ASSIGNMENT OF DEED OF TRUST

Jefferson, Missouri
"BRICKER"

MERS #: ███████████    SIS #: ████████████

Date of Assignment: May 1st, 2012
Grantor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR
GERSHMAN INVESTMENT CORPORATION, DOING BUSINESS AS GERSHMAN MORTGAGE, ITS
SUCCESSORS AND ASSIGNS at BOX 2026 FLINT MI 48501, 1901 E VOORHEES ST STE C.,
DANVILLE, IL  61834
Grantee: WELLS FARGO BANK, N.A. at 1 HOME CAMPUS, DES MOINES, IA  50328

Deed Of Trust executed by: ANDREW M. BRICKER AND RISHA L. BRICKER, HUSBAND AND WIFE as
original grantor  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR
GERSHMAN INVESTMENT CORPORATION, DOING BUSINESS AS GERSHMAN MORTGAGE, ITS
SUCCESSORS AND ASSIGNS as original grantee
Date of Deed of Trust:  03/02/2011 Recorded:  03/04/2011 as Instrument No.: 2011R-007636 In the
County of Jefferson, State of Missouri.

Property Address: 125 PISTIS ST, ARNOLD, MO 63010-2663

Legal: LOT THIRTY-TWO (32) OF MAXVILLE GARDENS, A SUBDIVISION AS SHOWN BY PLAT ON
FILE IN THE RECORDER'S OFFICE OF JEFFERSON COUNTY, MISSOURI, IN PLAT BOOK 252,
PAGES 10 AND 11.

Statutory Address: BOX 2026 FLINT MI 48501, 1901 E VOORHEES ST STE C., DANVILLE, IL  61834
    KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and
sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named
Assignee, the said Deed of Trust having an original principal sum of $284,062.00 with interest, secured
thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the
full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor
hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Deed of
Trust.

    TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee

Exhibit C

Doc # 2012R-016073   Page 1 of 2

forever, subject to the terms contained in said Deed of Trust.

    IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GERSHMAN INVESTMENT CORPORATION, DOING BUSINESS AS GERSHMAN MORTGAGE, ITS SUCCESSORS AND ASSIGNS
On _5-1-12_

By: _Leah Brown_
_Leah Brown_,
Assistant Secretary

STATE OF Iowa
COUNTY OF Polk

On _5/1/12_, before me, _Jessica Bernardino_, a Notary Public in and for Polk in the State of Iowa, personally appeared _Leah Brown_, Assistant Secretary, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_Jessica Bernardino_
Notary Expires: 2/2/2015

JESSICA BERNARDINO
Commission Number 771485
My Commission Expires
February 2, 2015

(This area for notarial seal)

Recording Requested By: WELLS FARGO BANK, N.A.
When Recorded Return To: DEFAULT ASSIGNMENT, MAC: ▮▮▮▮▮
PO BOX 1629, MINNEAPOLIS, MN  55440-9790

2021R-004197
FILED AND RECORDED
IN OFFICIAL RECORD
01/28/2021 01:51:51PM
DEBBIE DUNNEGAN, RECORDER
JEFFERSON COUNTY, MO
PAGES 2
REC FEE: $27.00
NS FEE:

**This document was eRecorded**

**Recording requested by:** WELLS FARGO BANK, N.A., 2701 WELLS FARGO WAY N9408-05C, MINNEAPOLIS, MN 55440-1629

**Return To:** WELLS FARGO BANK, N.A. ASSIGNMENT TEAM MAC: N9408-05C PO BOX 1629, MINNEAPOLIS, MN 55440-1269

### ASSIGNMENT OF MORTGAGE/DEED OF TRUST

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **WELLS FARGO BANK, N.A. , 1 HOME CAMPUS , DES MOINES, IA 50328** , (Grantor) by these presents does convey, assign, transfer and set over to: **WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE OF JUNIPER MORTGAGE LOAN TRUST A , 1600 SOUTH DOUGLASS ROAD SUITE 200-B, ANAHEIM, CA 92806** , (Grantee) the following described security instrument, with all interest, all liens, and any rights due or to become due thereon. Said Security Instrument for **$284062.00** is recorded in the State of **Missouri** , County of **Jefferson** Official Records, dated **03/02/2011** and recorded on **03/04/2011** , as Instrument No. **2011R-007636**

Original Trustor: **ANDREW M. BRICKER AND RISHA L. BRICKER, HUSBAND AND WIFE**

Original Beneficiary: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR GERSHMAN INVESTMENT CORP. D/B/A GERSHMAN MORTGAGE, ITS SUCCESSORS AND ASSIGNS**

Property Address: **125 PISTIS ST ARNOLD, MO 63010-2663**

Legal Description: **LOT THIRTY-TWO (32) OF MAXVILLE GARDENS, A SUBDIVISION AS SHOWN BY PLAT ON FILE IN THE RECORDER'S OFFICE OF JEFFERSON COUNTY, MISSOURI, IN PLAT BOOK 252, PAGES 10 AND 11.**

Date: **01/28/2021**

**WELLS FARGO BANK, N.A.**

By:



THIPKHAMDEE XIONG, Vice President Loan
Documentation

STATE OF MN
COUNTY OF Hennepin } s.s.

On **01/28/2021** before me, **LAVENDAH J KWAMBOKA OKWOYO** , a Notary Public, personally
appeared **THIPKHAMDEE XIONG , Vice President Loan Documentation** of **WELLS FARGO
BANK, N.A.** personally known to me (or proved to me on the basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on
the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

LAVENDAH J KWAMBOKA OKWOYO,
Notary Public
Commission #: **31080837**
My Commission Expires: **01/31/2022**

LAVENDAH J KWAMBOKA OKWOYO
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/2022

7b000ef8

**2022R-028497**
**FILED AND RECORDED**
**IN OFFICIAL RECORD**
**08/26/2022 11:47 AM**
**DEBBIE DUNNEGAN, RECORDER**
**JEFFERSON COUNTY, MO**
**PAGES   3**
**RECORDING FEE      30.00**



---

MARGIN ABOVE RESERVED FOR RECORDING INFORMATION

PREPARED, SUBMITTED, AND RETURN TO:
MELISSA LEE
SOUTHLAW, P.C.
13160 FOSTER SUITE 100
OVERLAND PARK, KS 66213-2660
(913) 663-7600

## ASSIGNMENT OF DEED OF TRUST

DATE OF INSTRUMENT:   8/25/22

GRANTOR:   **Wilmington Savings Fund Society, FSB, as trustee of Juniper Mortgage Loan Trust A**
c/o Carrington Mortgage Services, LLC
1600 South Douglass Road, Suite 200-A
Anaheim, CA 92806

GRANTEE:   **Carrington Mortgage Services, LLC**
1600 South Douglass Road, Suite 200-A
Anaheim, CA 92806

AFFECTED INSTRUMENT:

 **March 4, 2011, Document No. 2011R-007636**

LEGAL DESCRIPTION:

**LOT THIRTY-TWO (32) OF MAXVILLE GARDENS, A SUBDIVISION AS SHOWN BY PLAT ON FILE IN THE RECORDER'S OFFICE OF JEFFERSON COUNTY, MISSOURI, IN PLAT BOOK 252, PAGES 10 AND 11.**

File No. █████

██████████████████████

## ASSIGNMENT OF DEED OF TRUST

For value received, **Wilmington Savings Fund Society, FSB, as trustee of Juniper Mortgage Loan Trust A**, c/o Carrington Mortgage Services, LLC, whose address is 1600 South Douglass Road, Suite 200-A, Anaheim, CA, 92806 ("Assignor"), assigns, transfers and sets over to **Carrington Mortgage Services, LLC**, whose address is 1600 South Douglass Road, Suite 200-A, Anaheim, CA, 92806 ("Assignee"), together with the promissory note all attendant liens, rights and interests in the following described Deed Of Trust:

Original Loan Amount: $284,062.00
Recording Date: March 4, 2011, Document No. 2011R-007636
Original Borrower(s): Andrew M. Bricker and Risha L. Bricker, husband and wife

The legal description contained in the security instrument is as follows:

> **LOT THIRTY-TWO (32) OF MAXVILLE GARDENS, A SUBDIVISION AS SHOWN BY PLAT ON FILE IN THE RECORDER'S OFFICE OF JEFFERSON COUNTY, MISSOURI, IN PLAT BOOK 252, PAGES 10 AND 11.**, commonly known as 125 Pistis St, Arnold, MO 63010 (the "Property")

**Wilmington Savings Fund Society, FSB, as trustee of Juniper Mortgage Loan Trust A, by Carrington Mortgage Services, LLC, As Servicer and Attorney in Fact ("Assignor")**

By:_____

Printed Name: Dennis Micek, Foreclosure Supervisor

Title:_____

Date: 8/25/22

## ACKNOWLEDGMENT

STATE OF _____ )
                          ) ss.
COUNTY OF _____ )

BE IT REMEMBERED, that on this ____ day of _____, 20____, before me the undersigned, a notary public in and for the county and state, came _____, who is the same person who executed this instrument as _____ (Title) of Wilmington Savings Fund Society, FSB, as trustee of Juniper Mortgage Loan Trust A, by Carrington Mortgage Services, LLC, As Servicer and Attorney in Fact and such person acknowledged the execution to be the act and deed of the corporation. In witness, I have set my hand and affixed by official seal the day and year last above written.

**See Attached**

Notary Public:_____

Printed Name: Rebecca Payetta

My Commission Expires: Oct . 27. 2024

File No. ▮▮▮▮

# USE THE BELOW ACKNOWLEGMENT ONLY FOR CALIFORNIA CORPORATIONS EXECUTING THE ASSIGNMENT.

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached; and not the truthfulness, accuracy, or validity of that document.

## CALIFORNIA ALL-PURPOSE
## CERTIFICATE OF ACKNOWLEDGMENT

State of    California      )

          Orange        ) ss

County of _____ )

On **AUG 2 5 2022** before me, _____ Rebecca Payetta    **Notary Public** _____ (insert name and title of the officer), personally appeared __ **Dennis Micek** _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures(s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature _____

Notary      Rebecca Payetta

Date      **AUG 2 5 2022**

REBECCA PAYETTA
COMM. #2336457
Notary Public · California
Orange County
My Comm. Expires Oct. 27, 2024
NRO1

File No. ████

This Document Prepared By:
**BRANDY MANGALINDAN**
**CARRINGTON MORTGAGE SERVICES, LLC**
**CARRINGTON DOCUMENT SERVICES**
**ANAHEIM, CA 92806**
**1-866-874-5860**

When Recorded Mail To:
**CARRINGTON MORTGAGE SERVICES, LLC**
**C/O LOSS MITIGATION POST CLOSING DEPARTMENT**
**1600 SOUTH DOUGLASS ROAD, SUITE 200A**
**ANAHEIM, CA 92806**

Tax/Parcel #: ███████████

_____ [Space Above This Line for Recording Data] _____

**Original Principal Amount: $284,062.00**  **FHA/VA/RHS Case No:**
**Unpaid Principal Amount: $227,256.24**
**New Principal Amount: $243,030.32**  **Loan No:** ██████████
**New Money (Cap): $15,774.08**

# LOAN MODIFICATION AGREEMENT (DEED OF TRUST)

This Loan Modification Agreement ("Agreement"), made this **15TH** day of **DECEMBER, 2021**, between **ANDREW M. BRICKER AND RISHA L. BRICKER, HUSBAND AND WIFE** ("Borrower"), whose address is **125 PISTIS ST, ARNOLD, MISSOURI 63010** and **WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE OF JUNIPER MORTGAGE LOAN TRUST A BY CARRINGTON MORTGAGE SERVICES, LLC AS SERVICER AND ATTORNEY IN FACT** ("Lender"), whose address is **1600 SOUTH DOUGLASS ROAD, SUITE 200A, ANAHEIM, CA 92806** amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated **MARCH 2, 2011** and recorded on **MARCH 4, 2011** in **INSTRUMENT NO. 2011R-007636, JEFFERSON COUNTY, MISSOURI**, and (2) the Note, in the original principal amount of U.S. **$284,062.00, bearing the same date as**, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at

Carrington Custom Loan Modification Agreement ██████████

Page 1

Exhibit D

**125 PISTIS ST, ARNOLD, MISSOURI 63010**

the real property described is located in **JEFFERSON COUNTY, MISSOURI** and being set forth as follows:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of, **DECEMBER 1, 2021** the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$243,030.32**, consisting of the amount(s) loaned to Borrower by Lender, plus capitalized interest in the amount of U.S. **$15,774.08** and other amounts capitalized, which is limited to escrows and any legal fees and related foreclosure costs that may have been accrued for work completed.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **3.1250%**, from **DECEMBER 1, 2021**. The yearly rate of **3.1250%** will remain in effect until principal and interest are paid in full.

   Borrower promises to make the total modified monthly mortgage payment of U.S. **$1,605.47**, beginning on the **1ST** day of **JANUARY, 2022**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. Borrower's payment consists of payments for principal and interest of U.S. **$1,041.09**, plus payments for property taxes, hazard insurance, and any other permissible escrow items of US **$564.38**. Borrower understands that the modified monthly mortgage payment is subject to change if there is an increase or decrease in property taxes, insurance, or any other permissible escrow items. The escrow payments may be adjusted periodically in accordance with applicable law and therefore the total monthly payment may change accordingly. If on **DECEMBER 1, 2051** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in the Borrower is sold or transferred and the Borrower is not a natural person) without the Lender's prior written consent, the Lender may require immediate payment in full of all sums secured by this Security Instrument.

   If the Lender exercises this option, the Lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If the Borrower fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on the Borrower.

4. The Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever cancelled, null and void, as of the date specified in Paragraph No. 1 above:
   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and
   (b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.



5. **If the Borrower is currently subject to the protections of any automatic stay in bankruptcy, or have obtained a discharge in bankruptcy proceeding without reaffirming the mortgage loan debt, nothing in this Agreement or any other document executed in connection with this Agreement shall be construed as an attempt by Lender to impose personal liability under the Note and Deed of Trust/Mortgage. In such case, this Agreement is entered into in the ordinary course of business between the Lender and the Borrower in lieu of pursuit of in rem relief to enforce the lien. This Agreement does not revive the Borrower's personal liability under the Note and Deed of Trust/Mortgage, nor is it an attempt to collect, recover or offset any such debt as a personal liability of Borrower under the Note and Deed of Trust/Mortgage.**

6. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

7. Borrower agrees to make and execute other documents or papers as may be necessary to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

8. Borrower agrees that any costs, fees and/or expenses incurred in connection with servicing the loan that may be legally charged to the account, but have not been charged to the account as of the Modification Effective Date, may be charged to the account at a later date and shall be the Borrower's responsibility to pay in full. For example, if the loan is in foreclosure there may be foreclosure fees and costs that have been incurred but not yet assessed to the account as of the date the Modification Effective Date; Borrower will remain liable for any such costs, fees and/or expenses.

In Witness Whereof, I have executed this Agreement.

_____

Borrower: **ANDREW M BRICKER**

_____

Borrower: **RISHA L BRICKER**

2/1/22

_____
Date

2/1/22

_____
Date

_____[Space Below This Line for Acknowledgments]_____

**BORROWER ACKNOWLEDGMENT**

STATE OF **MISSOURI**,
COUNTY OF _St. Charles_____

On this ___1___ day of __February___ in the year _2022_, before me,
_Melinda Wotawa_____ (name of Notary), a Notary Public in and for
said state, personally appeared **ANDREW M BRICKER, RISHA L BRICKER**, known to
me to be the person (or persons) who executed the foregoing instrument, and acknowledged
that he/she/they executed the same for the purposes therein stated.

In witness whereof, I hereunto set my hand and official seal.

_Melinda Wotawa_____
Notary Public

Print Name: _Melinda Wotawa_____

My Commission expires:
___8/15/2023_____

MELINDA WOTAWA
Notary Public, Notary Seal
State of Missouri
St. Charles County
Commission # 15227464
My Commission Expires 08-15-2023

Carrington Custom Loan Modification Agreement ████████

Page 4

In Witness Whereof, the Lender has executed this Agreement.

**WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE OF JUNIPER MORTGAGE LOAN TRUST A BY CARRINGTON MORTGAGE SERVICES, LLC AS SERVICER AND ATTORNEY IN FACT**

_____     FEB 1 1 2022
By                                            (print name)                        Date
Terrence Morley, Director, Loss Mitigation    (title)
Carrington Mortgage Services, LLC Attorney in Fact

_____ [Space Below This Line for Acknowledgments] _____

## LENDER ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of _____ )                    SEE ATTACHED
County of _____ )

On _____ before me _____Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____                    (Seal)
          Signature of Notary Public SEE ATTACHED

# CALIFORNIA ALL-PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

> A notary public or other office completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of __California__ }

County of __Orange__ }

On __02/11/2022__ before me, __JUAN R. FELIX__ NOTARY PUBLIC,
(Here insert name and title of the office)

personally appeared __TERRENCE MORLEY__ ,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public Signature __JUAN R. FELIX__

JUAN R. FELIX
COMM.# 2256723
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires Aug. 31, 2022

(Notary Public Seal)

## ADDITIONAL OPTIONAL INFORMATION

### DESCRIPTION OF THE ATTACHED DOCUMENT

_____
(Title or description of attached document )

_____
(Title or description of attached document continued )

Number of Pages _____ Document Date _____

### CAPACITY CLAIMED BY THE SIGNER
- ☐ Individual(s)
- ☐ Corporate Officer
  _____
  (Title)
- ☐ Partner(s)
- ☐ Attorney-in-Fact
- ☐ Trustee(s)
- ☐ Other _____

### INSTRUCTIONS FOR COMPLETING THIS FORM

_This form complies with current California statutes regarding notary wording and, if needed, should be completed and attached to the document. Acknowledgments from other states may be completed for documents being sent to that state so long as the wording does not require the California notary to violate California notary law._

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they, is/are) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  - ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  - ❖ Indicate title or type of attached document, number of pages and date.
  - ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document with a staple.

OrderID-

2015 Version

## EXHIBIT A

**BORROWER(S): ANDREW M. BRICKER AND RISHA L. BRICKER, HUSBAND AND WIFE**

**LOAN NUMBER:** █████████

**LEGAL DESCRIPTION:**

**The land referred to in this document is situated in the CITY OF ARNOLD, COUNTY OF JEFFERSON, STATE OF MISSOURI, and described as follows:**

**LOT THIRTY-TWO (32) OF MAXVILLE GARDENS, A SUBDIVISION AS SHOWN BY PLAT ON FILE IN THE RECORDER'S OFFICE OF JEFFERSON COUNTY, MISSOURI, IN PLAT BOOK 252, PAGES 10 AND 11**

**ALSO KNOWN AS: 125 PISTIS ST, ARNOLD, MISSOURI 63010**

Date: **DECEMBER 15, 2021**
Loan Number: ███████
Lender: **WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE OF JUNIPER MORTGAGE LOAN TRUST A BY CARRINGTON MORTGAGE SERVICES, LLC AS SERVICER AND ATTORNEY IN FACT**

Borrower: **ANDREW M BRICKER, RISHA L BRICKER**

Property Address: **125 PISTIS ST, ARNOLD, MISSOURI 63010**

# NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice.** The undersigned hereby admit to having each received and read a copy of this Notice on or before execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

Borrower: **ANDREW M BRICKER**                                                     2/1/22
                                                                                                              **Date**

Borrower: **RISHA L BRICKER**                                                       2/1/22
                                                                                                              **Date**

Date: **DECEMBER 15, 2021**
Loan Number: ███████
Lender: **WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE OF JUNIPER MORTGAGE LOAN TRUST A BY CARRINGTON MORTGAGE SERVICES, LLC AS SERVICER AND ATTORNEY IN FACT**

Borrower: **ANDREW M BRICKER, RISHA L BRICKER**

Property Address: **125 PISTIS ST, ARNOLD, MISSOURI 63010**

## ERRORS AND OMISSIONS COMPLIANCE AGREEMENT

In consideration of **WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE OF JUNIPER MORTGAGE LOAN TRUST A BY CARRINGTON MORTGAGE SERVICES, LLC AS SERVICER AND ATTORNEY IN FACT**

(the "Lender") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs or any municipal bond authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender. Borrower agrees to assume all costs that may be incurred by the Lender, including without limitation, actual expenses, legal fees and marketing losses, as a result of the Borrower's failure to comply with all such requests within such 30 day time period .

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender.

Borrower: **ANDREW M BRICKER**                                           2/1/22 Date

Borrower: **RISHA L BRICKER**                                           2/1/22 Date

| NAME: | Risha Bricker | | | CASE NO: | 17-43664-659 |
| CLIENT: | Carrington Mortgage Services, LLC | | | DATE FILED: | 5/25/2017 |
| ACCT NO: | XXXXXX4962 | | | FILE NO: | 229343 |

| TRANS DATE | APPLIED TO | CHECK NUMBER | DESCRIPTION | AMOUNT RECEIVED | AMOUNT DUE | AMOUNT UNAPPLIED | SUSPENSE BALANCE |
|---|---|---|---|---|---|---|---|
| 03/23/22 | 01/01/22 | | | $ 8,427.42 | $ 1,605.47 | $ 6,821.95 | $ 6,821.95 |
| 03/23/22 | 02/01/22 | | | $ - | $ 1,605.47 | (1,605.47) | 5,216.48 |
| 03/23/22 | 03/01/22 | | | $ - | $ 1,605.47 | (1,605.47) | 3,611.01 |
| 03/23/22 | 04/01/22 | | | $ - | $ 1,605.47 | (1,605.47) | 2,005.54 |
| 03/23/22 | 05/01/22 | | | $ - | $ 1,605.47 | (1,605.47) | 400.07 |
| 04/04/22 | | | | $ 6.58 | $ - | 6.58 | 406.65 |
| 05/10/22 | | | | $ 7.69 | | 7.69 | 414.34 |
| 07/08/22 | | | | $ 19.46 | | 19.46 | 433.80 |
| 08/15/22 | | | | $ 11.88 | | 11.88 | 445.68 |
| 10/05/22 | | | | $ 31.10 | | 31.10 | 476.78 |
| 10/13/22 | 06/01/22 | | | $ 1,990.15 | $ 1,610.68 | 379.47 | 856.25 |
| | | | | | | - | 856.25 |
| Due For | | | | | | | 856.25 |
| | 07/01/22 | | | $ - | $ 1,610.68 | (1,610.68) | (754.43) |
| | 08/01/22 | | | $ - | $ 1,610.68 | (1,610.68) | (2,365.11) |
| | 09/01/22 | | | $ - | $ 1,610.68 | (1,610.68) | (3,975.79) |
| | 10/01/22 | | | $ - | $ 1,610.68 | (1,610.68) | (5,586.47) |
| | 11/01/22 | | | $ - | $ 1,610.68 | (1,610.68) | (7,197.15) |
| | | | | | | - | (7,197.15) |
| | | | | | | - | (7,197.15) |
| | | | | | | - | (7,197.15) |
| | | | | | | - | (7,197.15) |
| | | | | | | - | (7,197.15) |
| | | | | | | - | (7,197.15) |
| | | | | | | - | (7,197.15) |
| | | | | | | - | (7,197.15) |
| | | | | | | - | (7,197.15) |